Citation Nr: 1528182 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 08-13 677 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to a total disability rating based on individual unemployability (TDIU) by reason of service-connected disability, to include extraschedular consideration.


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Taylor, Associate Counsel
INTRODUCTION

The Veteran served on active duty from October 1966 to February 1970. 

This matter come before the Board of Veterans' Appeals (Board) on appeal from October 2007 and February 2014 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania, which denied entitlement to TDIU.

The Board notes that the Veteran initiated an appeal of an October 2007 rating decision that continued a 30 percent disability rating for service-connected post-traumatic stress disorder (PTSD). The Veteran was afforded a Travel Board hearing in October 2010; a transcript of the testimony offered at this hearing has been associated with the electronic record. In June 2012, the Veteran was advised that the Veterans Law Judge who conducted the October 2010 hearing was no longer employed by the Board. Pursuant to 38 C.F.R. § 20.717 (2014), the Veteran was offered the opportunity for an additional hearing. The Veteran did not respond to the request.

In August 2012, the Board granted the Veteran entitlement to a 50 percent rating for PTSD and remanded the case for readjudication of the inferred issue of entitlement to TDIU. In October 2013, the Veteran was provided with notice regarding the TDIU claim, which included an application for increased compensation based on unemployability (VA Form 21-8940). The Veteran has not returned the completed form to VA. 

In December 2014, the Board remanded this case for additional development. The requested actions were taken and the case has since been returned to the Board for adjudication. 

This is a paperless appeal located on the Veterans Benefits Management System (VBMS). Documents on the Virtual VA paperless claims processing system are either duplicative of the evidence of record or not pertinent to the present appeal. 

FINDINGS OF FACT

1. The Veteran's only service-connected disability is PTSD, rated as 30 percent disabling effective from July 31, 2002, to July 27, 2007, and 50 percent disabling thereafter. 

2. VA's Director of Compensation Service has determined that the Veteran's service-connected PTSD does not render him unemployable. 

3. The factual foundation for the Director's review is full and accurate, and it otherwise appears that the Veteran's service-connected PTSD does not preclude him from securing and retaining all forms of substantially gainful employment. 


CONCLUSION OF LAW

The criteria for a TDIU are not met on a schedular or extraschedular basis. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Stegall Concerns

As noted in the Introduction, in an August 2012 decision, the Board inferred a claim for TDIU and remanded the claim for additional evidentiary and procedural development. In particular, the Board remanded the Veteran's claim for VCAA notice and development. The AOJ provided the Veteran with the required VCAA notice in October 2013; however the Veteran failed to complete and return the attached VA Form 21-8940, as requested. The AOJ then readjudicated the Veteran's claim for entitlement to TDIU. In December 2014, the Board again remanded the Veteran's claim for entitlement to TDIU. The Board instructed the AOJ to obtain any pertinent VA treatment records showing treatment for PTSD from September 2010 to the present and to refer the Veteran's claim for TDIU to the Director of Compensation Service for extraschedular consideration.

After obtaining updated treatment records from the Lebanon VA Medical Center, the Board referred the Veteran's claim for entitlement to TDIU to the Director of Compensation Service. The AOJ included a full statement as to the Veteran's service-connected disability, employment history, educational and vocational attainment, and all other factors having a bearing on the issue of entitlement to TDIU with this referral. In February 2015, the Director of Compensation Service denied entitlement to TDIU on an extraschedular basis. The AOJ then readjudicated the Veteran's claim for entitlement to TDIU.

Thus, the Board's prior remand instructions have been complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998) [where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance].

II. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R. § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate the claim. 

 Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

The VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The RO provided pre-adjudication VCAA notice by letter dated in October 2013. This letter notified the Veteran of the evidence needed to substantiate the claim for entitlement to TDIU, as well as what information and evidence must be submitted by the Veteran, what information and evidence would be obtained by VA, and the provisions for the effective date of the claim. 

 Duty to Assist

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claim. Service treatment records, post-service treatment records, and lay statements have been associated with the record. A VA psychiatric examination was obtained in November 2013, whereby the examiner reviewed the Veteran's claims file, examined the Veteran, and provided an opinion as to whether the Veteran's service-connected PTSD precluded him from all gainful employment. The VA medical opinion provided was thorough and fully adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007). In February 2015, the AOJ had VA's Director of Compensation Service consider an extraschedular TDIU award.

As the Veteran has not identified any additional evidence pertinent to the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.

III. Legal Criteria and Analysis

The Veteran seeks entitlement to TDIU due to his service-connected PTSD. After a review of the evidence of record, the Board finds that entitlement to TDIU is not warranted. 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (2014). A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340(a)(1), 4.15 (2014).

"Substantially gainful employment" is that employment "which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). "Marginal employment shall not be considered substantially gainful employment." 38 C.F.R. § 4.16(a) (2014).

A total disability rating for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more. If there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a) (2014).

In this case, the Veteran's only service-connected disability is PTSD, rated as 30 percent disabling effective from July 31, 2002, to July 27, 2007, and 50 percent disabling therafter. Therefore, he does not meet the basic percentage requirements for eligibility for consideration for the grant of TDIU under 38 C.F.R. § 4.16(a).

However, where the percentage requirements set forth above are not met, entitlement to the benefit on an extraschedular basis may be considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, and consideration is given to the veteran's background, including his employment and educational history. Therefore, rating boards should submit to the Director, Compensation Service, for extra- schedular consideration all cases of veterans, who are unemployable due to service-connected disability, but who fail to meet the percentage standards set forth in paragraph (a) of this section. 38 C.F.R. § 4.16(b) (2014).

In a private treatment record dated in September 2000, the Veteran reported that he worked the past year and a half as an electrician and it was going well. The physician assigned a Global Assessment of Functioning (GAF) score of 55.

In a VA treatment record dated in January 2001, the Veteran reported that for the past 26 years, he had worked for the Caterpillar plant. He noted that he was laid off when the plant closed in 1998. He indicated that he was partially retired, but he had returned to work as an electrician. The Veteran also reported that he had a leadership position with a Veteran's Service Organization.

In a submission dated in September 2001, the Veteran indicated that he was not sure how much longer he could last at work. He noted that he would lose his train of thought and had poor concentration.

In a November 2001 VA psychiatric examination, the Veteran reported that he had been employed by an electrician since March 2001. He noted that, prior to this job, he worked for approximately one and one half years. He also noted that he worked at Caterpillar for 26 years prior to the plant closing in 1998. The examiner noted that the Veteran had a good work history. The examiner assigned a GAF score of 80 to 90.

In an October 2002 VA psychiatric examination, the Veteran reported that he had a good employment record as an electrician for Caterpillar for 26 years. However, he noted that he made no friends at work and did not socialize with anyone. The Veteran reported that after he was laid off in 1998, he had two periods of brief employment, each lasting one to two months. The Veteran reported that he was in constant worry that he would never be employed again. The examiner assigned him a GAF of 65.

In a medical submission dated in July 2007, Dr. A.S. noted that the Veteran continued to be extremely emotionally handicapped. She assigned a GAF of 51.

In an August 2007 VA psychiatric examination, the Veteran noted continued counseling every two weeks since 2000. His overall affect was markedly depressed throughout the session. He denied any active suicidal thoughts, but acknowledged passive suicidal thinking. The Veteran's thought process was clear, coherent, goal-directed, and logical. His thought content was free of any obsessions, compulsions, delusions, or hallucinations. He was alert and oriented. There was no evidence of any major concentration or memory disturbances. His judgement and insight were felt to be pretty good. The Veteran reported that he continued to work as an electrician. He noted a few occasions where he struggled with hostile customers, but indicated that his employment was okay overall. The examiner assigned a GAF of 55 to 65.

In a September 2009 VA psychiatric examination, the Veteran's thought content was free of any obsessions, compulsions, delusions, or hallucinations. He did not have any active or passive suicidal or homicidal thoughts. He was alert and oriented, and there was no evidence of any major concentration or memory disturbance. His judgment and insight were felt to be pretty good. The Veteran reported that he had retired as full-time electrician, but still worked part-time as needed. He indicated that he felt better since leaving his job because he felt less stressed and less tense overall. He noted that he worked 23.5 hours in the past month. The examiner assigned a GAF of 55 to 65.

In the Veteran's October 2010 Travel Board hearing, he testified as to problems at work. He noted that he was almost fired for a lack of caring. The Veteran indicated that he worked by himself most of the time running a machine. He noted that he continued to have a hard time dealing with customers on a daily basis. The Veteran testified that he took an early retirement due to the stress of dealing with customers.

In an August 2012 decision, the Board inferred a claim for TDIU and remanded the claim for additional evidentiary and procedural development. The AOJ provided the Veteran with the required VCAA notice in October 2013; however the Veteran failed to complete and return the attached VA Form 21-8940, as requested. 

In a November 2013 VA psychiatric examination, the examiner assigned a GAF of 55 to 65. The examiner found the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The Veteran reported that he remained married to his second wife since 1995. He noted that he loved his wife and found her generally supportive. He reported that he and his wife would go out to eat once or twice weekly, watch movies together, go shopping together, and attend church together. The Veteran indicated that he and his wife socialized with other church members about twice monthly. He denied having any close friends.

The Veteran reported that he was a retired electrician. He noted that he retired in 2009 after ten years of full-time work. The Veteran indicated that he was currently working part-time for a small electrical company doing residential work two to three days per week. He reported that he generally enjoyed this work, and tried to avoid interaction with the homeowner. The Veteran indicated that much of the social contact with the homeowner was handled by his boss, which he preferred. The Veteran noted that he was "not so diplomatic" in navigating customer problems. The Veteran denied any history of psychiatric hospitalizations or suicide attempts. The Veteran had the following symptoms: depressed mood, suspiciousness, chronic sleep impairment, flattened affect, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships.

After a thorough examination, the examiner found that the Veteran's limited frustration tolerance and depressed mood would likely cause the most functional impairment when interacting with co-workers and customers; however, much of this was presently handled by the Veteran's boss. The examiner found that the Veteran was capable of maintaining gainful, full-time employment at either a sedentary or physical job. The examiner noted; however, that the Veteran's current psychiatric symptoms would likely cause him occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily.

In a VA treatment record dated in March 2014, the Veteran reported that he was retired from Caterpillar, but working over the summer as a part-time electrician for pool installation.

The AOJ sought an opinion from the Director of Compensation Service. The AOJ included a full statement as to the Veteran's service-connected PTSD, employment history, educational and vocational attainment, and all other factors having a bearing on the issue of entitlement to TDIU with this referral. In a February 2015 letter, the Director of Compensation Service concluded that entitlement to TDIU on an extraschedular basis was not warranted, as there was no indication that the Veteran could not obtain and maintain a substantially gainful occupation due to his service-connected PTSD.

Based on the evidence, the Board concludes that a TDIU is not warranted on an extraschedular basis. The Director of Compensation Service has determined, based on a full and accurate factual foundation, that the Veteran's service-connected PTSD does not render him unemployable. That decision was made by the Director in accordance with 38 C.F.R. § 4.16(b). 

The Board concurs with the decision reached by the Director. The most probative evidence of record weighs against finding that the Veteran's service-connected PTSD precludes him from obtaining or engaging in substantially gainful employment. The Board has considered the statements of the Veteran as to his difficulties with employment and dealing with co-workers and customers as a result of his service-connected PTSD, and these statements are found to be competent, credible and probative as to the symptoms experienced and observed. However, they are outweighed by the November 2013 VA examiner's opinion, who undertook a detailed review of the Veteran's documented medical records and performed a complete physical examination of the Veteran. 

Although the November 2013 VA examiner found that the Veteran's limited frustration tolerance and depressed mood would likely cause the most functional impairment when interacting with co-workers and customers, the examiner noted that much of this was presently handled by his boss. The examiner found that the Veteran was capable of maintaining gainful, full-time employment at either a sedentary or physical job. The examiner noted; however, that the Veteran's current psychiatric symptoms would likely cause him occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily.

Finally, the Board observes that the Veteran has a long history of full-time work with Caterpillar. He stopped working due to being laid off in 1998 because the plant closed. He then worked full-time as an electrician before taking an early retirement in 2009. Although the Veteran took an early retirement, he has continued to work part-time as an electrician to the present time. The Veteran noted that he tried to avoid interaction with the clients because he was "not so diplomatic" in navigating customer problems; however, he also reported that he generally enjoyed this work. He further indicated that much of the social contact with the homeowners was handled by his boss, which he preferred. 

In closing, the Board does not doubt that the Veteran's service-connected PTSD has some impact on his employability. However, the 50 percent schedular evaluation currently in effect recognizes significant industrial impairment resulting from his disability. For the reasons and bases set forth above, the preponderance of the evidence is against finding his service-connected PTSD is of such severity so as to preclude his participation in any form of substantially gainful employment. For all of these reasons, the Board finds that TDIU is not warranted. The preponderance of the evidence is against the claim and there is no doubt to be resolved. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1991).


ORDER

Entitlement to TDIU is not warranted.

____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs